Re: Linda JONES

v.

ORANGE HOUSING AUTHORITY, et al.

Civ. A. No. 82–4111.

United States District Court,
D. New Jersey.

April 5, 1983.

Nancy Goldhill, Essex-Newark Legal Services, Newark, N.J., for plaintiff.

Joseph C. Cassini, III, West Orange, N.J., for defendants Orange Housing Authority and Gerard Lardiere.

Abraham Gnessin, pro se defendant and on behalf of defendant L & A Properties.

## OPINION

STERN, District Judge.

Plaintiff Linda Jones moves for the award of attorneys' fees pursuant to 42 U.S.C. § 1988. The motion will be granted as to defendants Abraham Gnessin and L & A Properties and denied as to defendants Orange Housing Authority and Gerard Lardiere.

### FACTS

Since December 1, 1981, plaintiff Linda Jones has resided in an apartment leased to her by defendant L & A Properties and defendant Abraham Gnessin. She alleges that from December 1, 1981 to November 30, 1982, she held her tenancy pursuant to an Existing Housing Program Lease under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f. Under this arrangement, according to plaintiff, she paid $109.57 of the apartment's total monthly rent of $318.57 to defendants L & A Properties and Gnessin. Defendant Orange Housing Authority ("OHA"), with funds obtained pursuant to an annual contributions contract between it and the United States Department of Housing and Urban Development ("HUD"), provided the other $209.00 per month.

Plaintiff alleges that on October 5, 1982, defendant Gnessin signed an inspection report approving plaintiff's apartment for continued participation in the Section 8 program. She alleges that on October 7, defendant Gnessin signed an agreement with her stating that she and defendant Gnessin requested defendant Orange Housing Authority to approve renewal of the lease for an additional twelve month period. Plaintiff states, however, that on October 19, 1982 she sent a written complaint to defendant Gnessin regarding a lack of heat in her apartment, with a copy to the Orange Housing Code Enforcement Office, and that defendant Gnessin informed her eight days later that he would not renew her lease under the Section 8 program. On December 7, 1982, defendant Gnessin served plaintiff with a notice to quit, requiring her to

move from the apartment by January 31, 1983. The notice stated that plaintiff could rent the apartment as a month-to-month tenant by paying $340.87 per month in rent. Plaintiff states that her monthly income is $639.00 per month, and that she cannot afford this amount.

On December 7, 1982, plaintiff filed this action contending that the termination of her lease under the Section 8 program without good cause violated the United States Housing Act, 42 U.S.C. § 1437f, and the New Jersey Anti-Eviction Law, N.J.S.A. 2A:18–61.3; that the termination of the lease following her complaints about the lack of heat in her apartment violated the New Jersey Anti-Reprisal Law, N.J.S.A. § 2A:42–10.10; that the termination violated plaintiff's due process and First Amendment rights; and that the termination constituted a breach of contract. Plaintiff sought class certification, an injunction requiring defendants to renew plaintiff's Section 8 lease, and a declaration that defendants terminated plaintiff's lease without good cause and that such termination is unlawful. Plaintiff also sought costs, including attorneys' fees. On the same day, plaintiff moved for a temporary restraining order enjoining the defendants from taking steps to evict plaintiff and ordering defendant OHA to continue making rent subsidy payments to defendant Gnessin pending the outcome of the action. After reviewing the complaint and supporting papers, along with an affidavit by plaintiff's attorney that both defendants had received actual notice of the application, the Court entered the temporary restraining order, providing that defendants could move to dissolve the restraint on one day's notice to all parties, and set the matter down for a preliminary injunction hearing on December 13, 1982.

On the return date of the preliminary injunction hearing, defendant Gnessin appeared *pro se* and defendant OHA appeared through counsel. Defendant OHA did not oppose the relief sought; defendant Gnessin, however, while not contesting any of the allegations set forth in the complaint, stated that he would not renew the lease.[1] Defendant Gnessin was advised to retain counsel, and the matter was adjourned. On December 22, 1982, prior to the adjourned return date of the preliminary injunction hearing, the Court received a copy of a letter from defendant Gnessin to the OHA, dated December 21, 1982, in which defendant Gnessin stated that he would sign a new lease under the Section 8 program on behalf of plaintiff. Plaintiff's attorney, Nancy Goldhill, Esquire of Essex-Newark Legal Services, was provided with a copy of the letter, and states that the matter was not discussed with her before this action was taken. Aff. of Nancy Goldhill, ¶ 2. Plaintiff's attorney subsequently notified the Court that plaintiff considered the matter settled, and on January 6, 1983, the Court entered an order dismissing the action due to settlement.

On January 18, 1983, plaintiff moved to amend the judgment dismissing the case in order to file an application for attorneys' fees.[2] On February 4, 1983, plaintiff moved for the award of attorneys' fees in the amount of $3,120.00, this figure representing a total of 48 hours spent at $65 per hour.

Defendant Gnessin responded to the motion to amend the judgment by stating that the award of fees to plaintiff would be "wrong" and "unjust" since he had settled the matter by signing the lease, even though he felt it was "not the right thing to do," solely because he "did not want to be responsible for any attorney fees for myself, whether I won or lost, or attorney fees for the plaintiff if I lost." Aff. of Abraham

---

1. At one point during the hearing, defendant Gnessin suggested that he would not renew the lease even in the face of a court order requiring him to do so. Tr. of Proceedings, Dec. 13, 1982 at 3–4.

2. Plaintiff's motion to amend the judgment was untimely. Rule 59(e), Fed.R.Civ.P. However, the failure to move for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 within ten days of the entry of the judgment does not deprive the Court of the power to consider the matter. *White v. New Hampshire ———————— of Employment Security,* 455 U. S.Ct. 1162, 71 L.Ed.2d 325 (1982).

Gnessin, ¶¶ 3–4. Defendant Gnessin states that had he "any idea that I would have been liable for any money by settling the case, I would have made other arrangements." *Id.,* ¶ 3. Defendant Gnessin states that he consulted an attorney about the matter, but decided not to obtain counsel because the cost of hiring an attorney was "so prohibitive compared to the matter involved." *Id.,* ¶ 2.

Plaintiff's attorney responded to defendant Gnessin's affidavit by stating that she had made numerous attempts to resolve the matter with defendant Gnessin before the filing of the complaint, but that defendant Gnessin "was adamant in his refusal to sign a lease and in a very cavalier manner stated that I would have to sue him and he would see me in court." Aff. of Nancy Goldhill, ¶¶ 4–5. Plaintiff's counsel notes that attorneys' fees were requested in the complaint, states that there was no discussion of attorneys' fees prior to the entry of the dismissal of the action, and states that defendant Gnessin rejected her offer to enter into a formal settlement agreement. *Id.,* ¶¶ 3, 7–8. On February 28, 1983, defendant Gnessin submitted a letter in opposition to the award of fees which does not contradict any of the statements made by plaintiff's counsel. Instead, defendant Gnessin argues that any award of counsel fees to plaintiff would constitute the unwarranted assessment of punitive damages against him, since plaintiff was represented by a legal services organization and therefore did not incur any legal fees in the matter. Defendant Gnessin also states that the matter could have been resolved in state court rather than federal court.

Defendant OHA, through its counsel, Joseph C. Cassini, III, Esquire, has responded to the motion for counsel fees by asserting that its position throughout the litigation has been the same as that of the plaintiff: that there was no good cause for defendant Gnessin's refusal to sign a new lease agreement with the plaintiff, and that the lease should be renewed. The OHA's counsel states that he "strongly urged" defendant Gnessin to renew the lease and that he "advised him of the repercussion that would

result if he did not do so," but that defendant Gnessin remained "adamant" in his refusal to renew the lease. The OHA also states that it is a federally funded body with limited resources, and that an award of attorneys' fees would place an undue burden on OHA given its budgetary constraints.

## DISCUSSION

■ In pertinent part, 42 U.S.C. § 1988 provides that

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

It is clear that plaintiff is a "prevailing party" as those words are used in § 1988. In *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980), the Court found that Congress intended to award fees pursuant to § 1988 in cases "in which both a statutory and substantial constitutional claim are settled favorably to the plaintiff without adjudication." Plaintiff's constitutional claim that the termination of her Section 8 lease without good cause violated her due process rights is clearly a substantial one, as similar claims have recently been upheld by two circuit courts of appeals. *Jeffries v. Georgia Residential Finance Authority,* 678 F.2d 919 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *Swann v. Gastonia Housing Authority,* 675 F.2d 1342 (4th Cir.1982). Nor is there any doubt that the matter was "settled favorably" to plaintiff: after prevailing on her application for a temporary restraining order and after receiving a strong indication from the Court that she would prevail on her motion for a preliminary injunction, plaintiff received the primary relief sought in the complaint—a renewal of her lease under the Section 8 program.

While the language of § 1988 indicates that the award of attorneys' fees to the prevailing party is within the Court's discretion, it is clear that this discretion is narrowly circumscribed. Attorneys' fees must be awarded to the prevailing party unless "special circumstances" render the award of fees unjust, *Staten v. Housing Authority of the City of Pittsburgh,* 638 F.2d 599 (3d Cir.1980), and cases in which such special circumstances have been found "have been few and very limited." *Love v. Mayor of Cheyenne,* 620 F.2d 235, 237 (10th Cir.1980).[3] The factors set forth by defendant Gnessin do not constitute the requisite special circumstances. First, it is of no moment that plaintiff has been represented in this litigation by a legal services office. In the consideration and passage of the legislation now codified as 42 U.S.C. § 1988, Congress specifically endorsed decisions allowing fees to public interest groups. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 70 n. 9, 100 S.Ct. 2024, 2034 n. 9, 64 L.Ed.2d 723 (1980). In holding that a legal services organization was entitled to the award of fees under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b), the Third Circuit stated:

> As a general matter, awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards....
> The statutory policies underlying the award of fees justify such shifting without regard to whether the individual plaintiff initially assumed the financial burdens of representation.... The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying statutes as much as an

award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights. [Citations omitted]. Moreover, assessing fees against defendants in all circumstances may deter wrongdoing in the first place.

*Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Thus, defendant Gnessin's argument that fees should not be awarded because plaintiff was represented by a legal services office is clearly untenable.

Defendant Gnessin also claims that an award of fees would be unjust because he promptly settled this action in order to avoid the payment of large legal fees. This argument is completely without merit. Defendant Gnessin does not dispute the assertions by both plaintiff and the OHA that he adamantly rejected numerous offers of settlement both before and during the course of the litigation. Having forced substantial legal expenditures by plaintiff's attorney in order to vindicate plaintiff's legal rights, defendant Gnessin cannot avoid his responsibility to pay for these services merely because he has decided to dispose of the litigation as cheaply as possible. *Consumers Union v. Virginia State Bar,* 688 F.2d 218, 222 (4th Cir.1982), *cert. denied,* 51 U.S.L.W. 3902 (June 20, 1983) (No. 82–1300) (where defendant takes steps to eliminate the effects of a violation only after a lawsuit is filed, the policy of § 1988 precludes recognizing such a response as a "special circumstance" barring the award of fees). Were we to adopt defendant Gnessin's argument, a defendant would be free to violate the law, and then, in the event that plaintiff incurs substantial legal expenses and obtains a clear indication that

**3.** In *Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), the Second Circuit articulated a different test in situations in which "a plaintiff sues for damages and the prospects of success are sufficiently bright to attract competent private counsel on a contingent fee basis." We need not decide whether or not the *Zarcone* rationale is sound, since plaintiff has not sought money damages in this case.

the defendant will lose, merely change his conduct without incurring any cost. Such a result is clearly at odds with the purpose of § 1988.

 Defendant Gnessin also claims that he would not have settled the action had he known that the settlement could result in liability for attorneys' fees. Nothing done in connection with this case, however, in any way indicates that plaintiff has relinquished her right to seek attorneys' fees as a prevailing party. Defendant Gnessin concedes that the matter of attorneys' fees was not discussed before the Court dismissed the action as settled; indeed, had plaintiff's attorney initiated any such discussion, she would have been acting improperly. *See Prandini v. National Tea Co.,* 557 F.2d 1015, 1021 (3d Cir.1977) (discussion and negotiation of appropriate compensation for attorneys should not begin until after settlement of the liability aspect of a case). While defendant Gnessin may have been misinformed by the attorney he originally consulted as to the effect of his signing of the lease on the award of attorneys' fees, this misunderstanding cannot operate to deprive plaintiff of her right to the recovery of attorneys' fees in light of defendant's unilateral action providing plaintiff with the primary benefit sought in the litigation after receiving a clear indication from the Court that he would be ordered to do so. *Cf. Aho v. Clark,* 608 F.2d 365 (9th Cir.1979) (formal, negotiated settlement agreement contains no reference to an award of fees; motion for fees filed four months after settlement entered; court cannot conclude that the benefits obtained resulted from the filing of the suit).[4]

The situation with respect to defendant OHA is quite different. It is clear that where the injury of which plaintiff complains is one that a defendant did not create and is powerless to prevent, and where that defendant in fact makes unsuccessful efforts to redress that injury, special circumstances exist which make the award of fees against that defendant unjust. *Chastang v. Flynn & Ehrich,* 541 F.2d 1040, 1045 (4th Cir.1976). Defendant OHA's statements that it has never opposed the relief sought by the plaintiff, and in fact repeatedly urged defendant Gnessin to provide that relief, are uncontradicted. In these circumstances, an award of fees against the OHA is clearly inappropriate.

Accordingly, plaintiff's motion for an award of attorneys' fees is granted as to defendant Gnessin and denied as to defendant OHA.

While the Court has determined that it must award attorneys' fees against defendant Gnessin, it still retains substantial discretion in determining the amount of attorneys' fees to be awarded. In making this determination, it will consider all relevant factors, including any information as to the financial hardship that an award of fees will place on defendant Gnessin and any objections that defendant Gnessin may have to the number of hours set forth or the hourly rate sought in plaintiff's fee petition. Any submission that defendant Gnessin may wish to make concerning the amount of the fee award should be filed with the Court within 20 days from the filing of this opinion. Plaintiff will have seven days from that date to file any responsive papers. The Court will then determine the amount of the fee award.

---

4. Defendant Gnessin has appeared in this action *pro se.* His affidavit indicates that his failure to obtain counsel was not dictated by a financial inability to retain a lawyer, but instead reflected a business judgment that this case was not worth the expense of hiring an attorney. *See supra* at 1381–1382. In light of this, defendant Gnessin cannot rely on his *pro se* status to defeat plaintiff's motion for fees. The Court has found no case in which the defendant's *pro se* status has been considered to be a special circumstance justifying the denial of fees. *See Sek v. Bethlehem Steel Corp.,* 463 F.Supp. 144 (E.D.Pa.1979) (attorneys' fees assessed against unsuccessful *pro se* plaintiff in Title VII suit).