EDDIE RAY CRUMP v. BOARD OF EDUCATION, HICKORY ADMINISTRA-
TIVE SCHOOL UNIT, WILLIAM PITTS, LOIS YOUNG, BARBARA A.
GARLITZ, RUEBELLE A. NEWTON, C. JOHN WATTS, III AND LARRY O.
ISENHOUR

No. 8525SC388

(Filed 18 February 1986)

Schools § 13.2— driver's education teacher—dismissal for insubordination—suffi-
ciency of evidence

Evidence was sufficient to support defendant's dismissal of plaintiff
driver's education teacher on the ground of insubordination where it tended to
show that plaintiff twice drove alone with a female student, thereby willfully
disregarding and refusing to obey the principal's written, reasonable directive
given over a year earlier; and the uncontradicted evidence showed that rather
than going to the principal to find out if the directive had been lifted and what
to do when one of his two students was absent, plaintiff disregarded the
reasonable instructions given him.

APPEAL by plaintiff from *Sitton, Judge*. Judgment entered 29
November 1984, in Superior Court, CATAWBA County. Heard in
the Court of Appeals 5 November 1985.

*Ferguson, Watt, Wallas & Adkins by John W. Gresham for
plaintiff appellant.*

*Mitchell, Teele, Blackwell, Mitchell & Smith by Thomas G.
Smith and W. Harold Mitchell; and A. Terry Wood for defendant
appellees.*

COZORT, Judge.

Plaintiff appeals the superior court's entry of judgment af-
firming the Hickory Board of Education's dismissal of him on the
grounds of immorality and insubordination. Plaintiff contends the
Board of Education's findings, inferences and conclusions are not
supported by substantial evidence in the whole record. Plaintiff
also assigns as error the superior court's taxing cost against him.
We affirm.

As of the 1983-84 school year, plaintiff Eddie Ray Crump was
a public schoolteacher employed by the Board of Education, Hick-
ory Administrative School Unit. Mr. Crump, who was primarily a
driver's education instructor and coach, had been employed for

nine years and had attained career status, making applicable the statutory protections for career teachers contained in G.S. 115C-325.

On 16 March 1984 the Superintendent, Dr. Stuart Thompson, notified plaintiff in writing of his intent to seek dismissal of Mr. Crump pursuant to the provision of G.S. 115C-325. Subsequently, on 4 June 1984 Superintendent Thompson submitted to the Board of Education his recommendation that plaintiff be dismissed on the grounds of immorality and insubordination, among others.

By stipulation, the hearing of the matter commenced on 6 June 1984 and continued into the early morning hours of the next day. At the conclusion of the hearing the Board of Education set out on the record a resolution containing certain findings of fact and conclusions of law and voted to dismiss plaintiff on the grounds of immorality and insubordination. On 11 June 1984 plaintiff received from the Board of Education its resolution entitled "Findings of Fact, Conclusions of Law and Order" notifying plaintiff that he was dismissed.

Pursuant to G.S. 115C-325(n) plaintiff filed a Complaint and Petition for Judicial Review on 9 July 1984. The Board of Education subsequently filed a transcript of the hearing along with the exhibits offered into evidence. The case was heard by Superior Court Judge Claude S. Sitton on 5 November 1984. On 29 November 1984 Judgment was entered upholding the Board of Education's dismissal of plaintiff.

The primary issue presented by this appeal is whether the decision of the Board of Education dismissing plaintiff is supported by substantial evidence in view of the entire record. G.S. 150A-51(5); *Overton v. Goldsboro City Board of Education*, 304 N.C. 312, 317, 283 S.E. 2d 495, 498 (1981). Therefore, our review is limited to determining whether the superior court correctly decided that the Board's decision to dismiss plaintiff on the grounds of immorality and insubordination was supported by substantial evidence in light of the whole record. *Overton, supra.*

The standard of review set forth in G.S. 150A-51(5), which is known as the "whole record" test, is explained in *Thompson v. Wake County Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977):

This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 95 L.Ed. 456, 71 S.Ct. 456 (1951); *Underwood v. Board of Alcoholic Control*, 278 N.C. 623, 181 S.E. 2d 1 (1971); Hanft, *Some Aspects of Evidence in Adjudication by Administrative Agencies in North Carolina*, 49 N.C. L. Rev. 635, 668-74 (1971); Hanft, *Administrative Law*, 45 N.C. L. Rev. 816, 816-19 (1967). The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo, Universal Camera Corp., supra.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. *Universal Camera Corp., supra.*

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 414, 233 S.E. 2d at 544.

It is not necessary that we find that *all* of the grounds for dismissal are supported by substantial evidence. A finding that there is substantial evidence, looking at the record as a whole, of any one of the two grounds listed under G.S. 115C-325(e)(1) which formed the basis of the dismissal is sufficient, where, as here, the teacher was notified that dismissal was based on that ground. *Baxter v. Poe*, 42 N.C. App. 404, 416, 257 S.E. 2d 71, 78, *disc. rev. denied*, 298 N.C. 293, 259 S.E. 2d 298 (1979).

We turn first to the charge of insubordination. G.S. 115C-325(e)(1)(c) provides that a career teacher may be dismissed for insubordination. The term insubordination " 'imports a willful disregard of express or implied directions of the employer and a refusal to obey reasonable orders.' *School District v. Superior*

*Court,* 102 Ariz. 478, 480, 433 P. 2d 28, 30 (1967)." *Thompson v. Wake County Board of Education,* 31 N.C. App. 401, 424-25, 230 S.E. 2d 164, 177-78 (1976), *rev'd on other grounds,* 292 N.C. 406, 233 S.E. 2d 538 (1977).

With respect to the insubordination charge, the Board of Education made the following findings and conclusions:

### FINDINGS OF FACT

\* \* \* \*

7. On April 9, 1981, as a result of the incident with Elizabeth Davis on April 6, 1981, Eddie Ray Crump was instructed in writing by the Principal of the High School that "there shall be a third person in the car during the road work phase of the driver education of female students" and the "failure to cooperate with these instructions could be interpreted as insubordination."

8. On April 2, 1982, the suggestion was made to Eddie Ray Crump by the Principal of the High School on his 1981-82 Teacher's Performance Appraisal Instrument that he "must make an effort to follow established rules and guidelines."

9. During the summer of 1982, while instructing Ursula "Hope" Bolick, a female high school student in driver education, the teacher, Eddie Ray Crump, grabbed her leg unnecessarily. The incident occurred while the two were in the driver education vehicle alone, in contravention of the Principal's instructions to the teacher. The teacher also drove with Ursula Bolick alone during driver training on two other occasions.

\* \* \* \*

12. On one or more occasions, Eddie Ray Crump instructed the following female students during the times specified, in the road work phase of their driver education while no third person was in the vehicle. These acts were in disobedience of the Principal's instructions, were knowingly and wilfully done and were admitted by the teacher, Eddie Ray Crump.

a. Ursula "Hope" Bolick in the summer of 1982,

b. Sheree Raker in the fall of 1983.

CONCLUSIONS

* * * *

2. At all times pertinent to the matters testified to in this hearing, it has been the duty of principals to give suggestions to teachers for the improvement of instruction. [Former N.C. Gen. Stat. Sec. 115-150, now Sec. 115C-288(c).]

3. A teacher must follow the reasonable orders, suggestions and instructions of his principal.

4. The instructions given to the teacher, Eddie Ray Crump, by his principal, which were to the effect that he was to have a third person in the vehicle during the driving phase of driver education, were reasonable and should have been followed by the teacher.

* * * *

8. The actions of Eddie Ray Crump in providing instruction to two female students in the road work phase of their driver education vehicle while no third person was in the vehicle has been admitted by the teacher and was done in disregard of the express written directions of his Principal. This was a wilful refusal by the teacher, Eddie Ray Crump, to obey the reasonable directions of his Principal and constitute insubordination under the provisions of N.C. Gen. Stat. Sec. 115C-325(e)(1)(c).

These findings and conclusions are amply supported by substantial evidence in the record. It is uncontested that in early April 1981, student Elizabeth Davis complained to Principal Henry Williamson about plaintiff's conduct while instructing her during her first day of the road work phase of driver's education, 6 April 1981. In a letter Ms. Davis wrote and submitted to Mr. Williamson on 7 April 1981, she complained of the following:

He was asking personal questions such as: Are you dating anyone steady? Do you play the field? Are you getting a new bathing suit this summer? Are you just going to go skinny-dipping?

He also said words that didn't pertain to driving, such as "crotch." He said holding your arm straight and he tried to use my crotch as a place for my elbow to point to and he pointed to my crotch and said, "That's your crotch." He also called me babe and honey.

He also touched me where I didn't think it was necessary, such as way up high on my leg, while holding my arm pressing against my breast. He was messing with my hair.

These are the reasons I have for my complaint.

Mr. Williamson showed the letter to Mr. Crump and talked with him about it. According to Mr. Williamson, Mr. Crump stated there was no truth to the letter. Mr. Williamson told Mr. Crump he needed to take action to see that this type of situation did not arise again.

Mr. Williamson instructed Mr. Crump to make sure that at least two students were in the car any time a female was taking the road work phase of driver's education. In a letter to Mr. Crump dated 9 April 1981, Mr. Williamson wrote the following:

Mr. Eddie R. Crump, Hickory High School.

Dear Mr. Crump:

This is to follow up on on our conversation on April 7, 1981, and to reemphasize the instructions given to you on that date.

The instructions were as follows:

There shall be a third person in the car during the road work phase of the driver education instruction of female students.

Your cooperation in this matter would be greatly appreciated.

Your failure to cooperate with these instructions could be interpreted as insubordination and neglect of duty.

In accordance with G.S. 115-142(b) the complaint, commendation, or suggestion shall be signed by the person who makes it and shall be placed in the teacher's file only after 5 days' notice to the teacher. Any denial or explanation relating to

such complaint, commendation, or suggestion that the teacher desires to make shall be placed in the file.

If I can answer any question or be of any help, please let me know.

Henry Williamson.

The letter had no expiration date. Ms. Davis was assigned to another instructor.

Plaintiff admitted that he subsequently drove alone with Hope Bolick and Sheree Raker. He testified that he drove with only one female student on these occasions because of absenteeism. Mr. Williamson admitted that he made no special arrangements for Mr. Crump on how to deal with a situation when there was only one student to drive.

Plaintiff testified that his driving alone with Ms. Bolick in the summer of 1982 was the first time since the Davis incident that he had driven alone with a female student. When asked if Principal Williamson's directive on driving with one female student was still in effect in 1982 and whether he was still obligated to follow it, plaintiff responded:

> Well, it had been a year or year and a half after the letter and doing no wrong and everything going along smoothly as far as I know, you know, and I just assumed that everybody was driving. And Coach Barger had one in the car and Coach Craft had one in the car. And we would go on and pick up other drivers from their homes.

When asked why he did not go to Mr. Williamson and inquire about the restriction when one student was absent, plaintiff replied: "We don't tell him what to do. We don't set guidelines for him to tell me. We got a chain of command. Coach Barger is my chain of command." Plaintiff testified, however, that he was unsure whether Coach Barger knew of the two-student requirement. In any event, he never asked Coach Barger or Mr. Williamson if the restriction had been lifted. There is no evidence that the directive was changed.

Based on an examination of the whole record, we conclude that the Board's dismissal of plaintiff on the ground of insubordination is supported by substantial evidence. There is sub-

stantial evidence to support the Board's conclusion that by twice driving alone with a female student, plaintiff willfully disregarded and refused to obey Principal Williamson's 9 April 1981 reasonable directive. While plaintiff seeks to explain his conduct on the grounds of passage of time and the unprovided for situation of one student being absent, these events do not prevent his conduct from being a willful refusal to obey a reasonable directive. The uncontradicted evidence shows that rather than going to Mr. Williamson to find out if the directive had been lifted and what to do when one of his two students was absent, he disregarded the reasonable instructions given him.

Having found substantial evidence in light of the whole record to support the Board's dismissal of plaintiff on the grounds of insubordination, we need not pass on the question whether the evidence of the other ground, immorality, was substantial. *Baxter v. Poe, supra,* 42 N.C. App. at 416, 257 S.E. 2d at 78.

We find plaintiff's second assignment of error, concerning the superior court's assessment of costs, to be without merit.

The judgment of the superior court affirming the Board of Education's dismissal of plaintiff is

Affirmed.

Judges ARNOLD and MARTIN concur.